UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
AYESHA ALI-REYNOSO, JACK
GORMAN, WALKER KEITH JERNIGAN,
DEXTER JONES, SOREN KODAK,
THEIS LUNDEN, JEREMY MCBRIAN,
HALI NELSON, ISAAC ROLLER,
JEFFREY SAMUEL STRICKLEN,
ISAIAH SHIP, BRETT WEINSTEIN,
ALEX WILKINS, and DAVID YANG,

                Plaintiffs,

     -against-

LEON YUGRAKH and ANCHOR AND
CANVAS SOLUTIONS, INC.,

                Defendants.
---------------------------------------------------------X

REPORT AND
RECOMMENDATION
24 CV 6090 (ENV)(RML)

LEVY, United States Magistrate Judge:

Pending before me, on referral from the Honorable Eric N. Vitaliano, United States District Judge, is plaintiffs' second motion for default judgment. For the reasons stated below, I respectfully recommend that the motion be granted in part and denied in part.

## BACKGROUND AND FACTS

Plaintiffs Ayesha Ali-Reynoso, Jack Gorman, Walker Keith Jernigan, Dexter Jones, Soren Kodak, Theis Lunden, Jeremy McBrian, Hali Nelson, Isaac Roller, Jeffrey Samuel Stricklen, Isaiah Ship, Brett Weinstein, Alex Wilkins, and David Yang ("plaintiffs") commenced this wage-and-hour action on August 30, 2024 against defendants Leon Yugrakh (the "individual defendant") and Anchor and Canvas Solutions, Inc. (the "corporate defendant") (together, "defendants") for alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL"). (Complaint, filed Aug. 30, 2024 ("Compl."), Dkt. No. 1.) Plaintiffs served the corporate defendant by delivering

and leaving copies of the summons and complaint with the New York Secretary of State pursuant to Federal Rule of Civil Procedure 4(h)(1)(B) and New York Business Corporation Law § 306(b)(1).  (Affidavit of Service of Robert Guyette, sworn to Nov. 5, 2024, Dkt. No. 10.)  Plaintiffs personally served the individual defendant on November 7, 2024, in compliance with Rule 4(e)(1) and New York Civil Practice Law and Rules § 308(1).  (Affirmation of Service of Damien Mohrmann, dated Nov. 7, 2024, Dkt. No. 9.)  Defendants failed to answer or otherwise respond to the complaint, and on December 30, 2024, the court ordered plaintiffs to move for entry of default.  (Order, dated Dec. 30, 2024.)

On January 21, 2025, plaintiffs requested a Clerk's Entry of Default pursuant to Federal Rule of Civil Procedure 55(a).  (Request for Certificate of Default, dated Jan. 21, 2025, Dkt. No. 12.)  The Clerk of Court denied plaintiffs' request due to their failure to comply with Local Civil Rule 55.1(a)(4), which requires a movant to file a certificate of service showing that all supporting papers have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default is sought.  (Denial of Request for Certificate of Default, dated Jan. 23, 2025.)  Plaintiffs renewed their request on February 17, 2025, and on February 19, 2024, the Clerk of Court noted defendants' defaults on the docket.  (Request for Certificate of Default, dated Feb. 17, 2025, Dkt. No. 14; Clerk's Entry of Default, dated Feb. 19, 2024 ("Entry of Default"), Dkt. No. 15.)

Plaintiffs first moved for default judgment on March 10, 2025.  (First Motion for Default Judgment, dated Mar. 10, 2025, Dkt. No. 16.)  The court denied that motion due to plaintiffs' failure to comply with the Servicemembers Civil Relief Act, 50 U.S.C. § 3931 (the "SCRA") and Local Civil Rule 55.2.  (See Order Adopting Report and Recommendation, dated Apr. 14, 2025.)  Plaintiffs renewed their motion for default judgment on May 14, 2025.  (See

2

Motion for Default Judgment, dated May 14, 2025 ("Mot."), Dkt. No. 35.)  Plaintiffs ask the court to enter judgment against defendants and award plaintiffs compensatory and liquidated damages, prejudgment interest, and attorney's fees and costs.  (Memorandum of Law in Support of Motion for Default Judgment, dated May 14, 2025 ("Mem."), Dkt. No. 36.)[1]  The following facts, as drawn from plaintiffs' complaint and declarations, are accepted as true for the purposes of this motion.  (Compl.; Declaration of Maria L. Chickedantz, Esq., dated May 14, 2025 ("Chickedantz Decl."), Dkt. No. 37; Affidavit of Ayesha Ali-Reynoso, sworn to Mar. 10, 2025 ("Ali-Reynoso Aff."), Dkt. No. 38; Affidavit of Jack Gorman, sworn to Mar. 5, 2025 ("Gorman Aff."), Dkt. No. 39; Affidavit of Walker Keith Jernigan, sworn to Mar. 7, 2025 ("Jernigan Aff."), Dkt. No. 40; Affidavit of Dexter Jones, sworn to Mar. 7, 2025 ("Jones Aff."), Dkt. No. 41; Affidavit of Theis Lunden, sworn to Mar. 10, 2025 ("Lunden Aff."), Dkt. No. 42; Affidavit of Jeremy McBrian, sworn to Mar. 10, 2025 ("McBrian Aff."), Dkt. No. 43; Affidavit of Hali Nelson, sworn to Mar. 2, 2025 ("Nelson Aff."), Dkt. No. 44; Affidavit of Isaac Roller, sworn to Mar. 5, 2025 ("Roller Aff."), Dkt. No. 45; Affidavit of Jeffrey Samuel Stricklen, sworn to Mar. 9, 2025 ("Stricklen Aff."), Dkt. No. 46; Affidavit of Isaiah Ship, dated Mar. 6, 2025 ("Ship Aff."), Dkt. No. 47; Affidavit of Brett Weinstein, sworn to Mar. 10, 2025 ("Weinstein Aff."), Dkt. No. 48; Affidavit of Alex Wilkins, sworn to Mar. 3, 2025 ("Wilkins Aff."), Dkt. No. 49; Affidavit of David Yang, sworn to Mar. 22 2025 ("Yang Aff."), Dkt. No. 50.)

---

[1] Although the complaint alleges that defendants failed to provide wage statements in violation of NYLL § 195(3) (Compl. ¶¶ 111–114), plaintiffs' motion for default judgment seeks liability and damages for plaintiffs' unpaid wages only.  (See generally Mot.; Mem.)

## I. Parties

### A. Defendants

The corporate defendant is a New York corporation with a principal place of business at 800 Snediker Avenue, Brooklyn, New York.  (Compl. ¶¶ 8, 23.)  "During the relevant time period, [the corporate defendant] was a fabrication studio as well as an art handling, crating, shipping, and installation company."  (Id. ¶ 25.)  The corporate defendant's handling/shipping team drove trucks to pack, transport, and install artworks in the greater New York area; their crating team built custom wooden crates to be shipped domestically and internationally; and their handling team transported goods from the fabrication studio for installation.  (Id. ¶¶ 28–30.)  The individual defendant is the founder and chief executive officer of the corporate defendant.  (Id. ¶ 32.)  He hired plaintiffs, set their rates of pay, had the power to fire them, and oversaw their job duties.  (Id. ¶ 34–35.)  Since 2021, defendants regularly employed twenty-five employees, engaged in interstate commerce, and had annual gross revenues of more than $500,000.  (Id. ¶¶ 31, 36.)

### B. Plaintiffs

Plaintiffs were all employed by defendants in various non-managerial, non-supervisory roles.  (Id. ¶¶ 2, 34, 37.)  Defendants failed to pay plaintiffs for hours that each plaintiff worked on various dates between late 2023 and early 2024.  (Id. ¶ 43.)

#### 1. Ali-Reynoso

Plaintiff Ali-Reynoso resides in Kings County.  (Id. ¶ 9.)  She worked for defendants for $31.25 an hour, approximately forty hours per week, from July 14, 2022 until January 10, 2024.  (Id. ¶ 46; Ali-Reynoso Aff. ¶¶ 4–9.)  Defendants did not pay Ali-Reynoso for 384 hours of work during the weeks ending on November 17, 2023, November 24, 2023, December 1, 2023, December 8, 2023, December 15, 2023, December 22, 2023, December 29,

2023, January 5, 2024, and January 12, 2024.  (Chickedantz Decl. ¶ 5, at 2; Compl. ¶ 47; Ali-Reynoso Aff. ¶¶ 11–12.)

2.  Gorman

Plaintiff Gorman resides in Kings County.  (Compl. ¶ 10.)  He worked for defendants for $40 an hour, at least forty hours per week, from July 13, 2022 until January 10, 2024.  (Id. ¶¶ 49–50; Gorman Aff. ¶¶ 4–10.)  Defendants did not pay Gorman for approximately 220 hours of work between December 4, 2023 and January 10, 2024.  (Chickedantz Decl. ¶ 5, at 3; Compl. ¶ 51; Gorman Decl. ¶¶ 12–13.[2])

3.  Jernigan

Plaintiff Jernigan resides in Kings County.  (Compl. ¶ 11.)  He worked for defendants for $45 an hour, at least forty hours per week, from November 9, 2022 until January 10, 2024.  (Id. ¶¶ 53–54; Jernigan Aff. ¶¶ 4–5, 10.)  Defendants did not pay Jernigan for approximately 300 hours of work between November 20, 2023 and January 10, 2024. (Chickedantz Decl. ¶ 5, at 3; Compl. ¶ 55; Jernigan Aff. ¶¶ 12–13.[3])

4.  Jones

Plaintiff Jones resides in Kings County.  (Compl. ¶ 12.)  He worked for defendants for $32 an hour, at least forty hours per week, from June 1, 2021 until January 10,

---

[2]  In his affidavit, Gorman states that defendants also owe him for an additional 12.5 hours of paid time off.  (Gorman Aff. ¶ 13.)  Plaintiffs' counsel states in her declaration, however, that "unpaid time off and unpaid healthcare reimbursements . . . are not included in [plaintiffs'] damages calculations" in the instant motion for default judgment.  (Chickedantz Decl. ¶ 5 n.2.)

[3]  Like Gorman, Jernigan states in his affidavit that he is owed for an additional four hours of paid time off "plus $388 for healthcare reimbursements."  (Jernigan Aff. ¶ 13.)  Plaintiffs' counsel states in her declaration, however, that "unpaid time off and unpaid healthcare reimbursements . . . are not included in [plaintiffs'] damages calculations" in the instant motion for default judgment.  (Chickedantz Decl. ¶ 5 n.2.)

2024.  (Id. ¶¶ 57–58; Jones Aff. ¶¶ 4–5, 10.)  Defendants did not pay Jones for approximately

184 hours of work between December 4, 2023 and January 10, 2024.  (Chickedantz Decl. ¶ 5, at

3; Compl. ¶ 59; Jones Aff. ¶¶ 12–13.)

### 5. Kodak

Plaintiff Kodak resides in Kings County.  (Compl. ¶ 13.)  He worked for

defendants for $32 per hour, at least forty hours per week, from January 14, 2022 until January

10, 2024.  (Id. ¶¶ 61–62.)  Defendants did not pay Kodak for approximately 160 hours of work

between December 1, 2023 and January 10, 2024.  (Id. ¶ 63; Chickedantz Decl. ¶ 5, at 4.)

### 6. Lunden

Plaintiff Lunden resides in Kings County.  (Compl. ¶ 14.)  He worked for

defendants for $45 an hour, at least forty hours per week, from May 30, 2022 until January 10,

2024.  (Id. ¶¶ 65–66; Lunden Aff. ¶¶ 4–5, 10.)  Defendants did not pay Lunden for

approximately 240 hours of work between November 25, 2023 and January 10, 2024.

(Chickedantz Decl. ¶ 5, at 4; Compl. ¶ 67; Lunden Aff. ¶¶ 12–13.)

### 7. McBrian

Plaintiff McBrian resides in Kings County.  (Compl. ¶ 15.)  He worked for

defendants for $30 an hour, thirty-two hours per week, from January 1, 2022 until November 10,

2023.  (Id. ¶¶ 69–70; McBrian Aff. ¶¶ 4–5.)  Defendants did not pay McBrian for approximately

64 hours of work between October 25, 2023 and November 10, 2023.  (Chickedantz Decl. ¶ 5, at

4; Compl. ¶ 71; McBrian Aff. ¶¶ 12–13.)

### 8. Nelson

Plaintiff Nelson resides in Kings County.  (Compl. ¶ 16.)  She worked for

defendants for $35 per hour for approximately forty hours per week from May 15, 2023 until

January 10, 2024.  (Id. ¶¶ 73–74; Nelson Aff. ¶¶ 4–5, 10.)  Defendants did not pay her for approximately 222 hours of work between December 4, 2023 and January 10, 2024. (Chickedantz Decl. ¶ 5, at 4–5; Compl. ¶ 75; Nelson Aff. ¶¶ 12–13.)

9.  Roller

Plaintiff Roller resides in Kings County.  (Compl. ¶ 17.)  Roller worked for defendants for nine hours on November 9, 2023, at an hourly rate of $52.50.  (Id. ¶ 77; Roller Aff. ¶¶ 11–12.)  Defendants never paid Roller for his work.  (Id.)

10. Stricklen

Plaintiff Stricklen resides in Kings County.  (Compl. ¶ 18.)  He worked for defendants for $33 per hour, approximately forty hours per week, from January 1, 2022 until January 10, 2024.  (Id. ¶¶ 79–80; Stricklen Aff. ¶¶ 4–5, 10.)  Defendants did not pay Stricklen for approximately 215 hours of work between November 27, 2023 and January 10, 2024. (Chickedantz Decl. ¶ 5, at 5; Compl. ¶ 81; Stricklen Aff. ¶¶ 12–13.)

11. Ship

Plaintiff Ship resides in New York County.  (Compl. ¶ 19.)  He worked for defendants for $33 per hour, approximately forty hours per week, from July 7, 2023 until January 10, 2024.  (Id. ¶¶ 83–84; Ship Aff. ¶¶ 4–5.)  Defendants did not pay Ship for approximately 235 hours of work between October 23, 2023 and January 10, 2024.  (Chickedantz Decl. ¶ 5, at 5; Compl. ¶ 85; Ship Aff. ¶¶ 12–13.)

12. Weinstein

Plaintiff Weinstein resides in Queens County.  (Compl. ¶ 20.)  He worked for defendants for $25 per hour, approximately forty hours per week, from September 8, 2023 until January 10, 2024.  (Id. ¶¶ 87–88; Weinstein Aff. ¶¶ 4–5, 10.)  Defendants did not pay Weinstein

for approximately 93 hours of work between October 30, 2023 and January 10, 2024. (Chickedantz Decl. ¶ 5, at 5; Compl. ¶ 89; Weinstein Aff. ¶¶ 12–13.)

> 13. <u>Wilkins</u>

Plaintiff Wilkins resides in Kings County.  (Compl. ¶ 21.)  He worked for defendants for $27.50 per hour, approximately forty hours per week, from January 1, 2022 until January 10, 2024.  (<u>Id.</u> ¶¶ 91–92; Wilkins Aff. ¶¶ 4–5, 10.)  Defendants did not pay Wilkins for approximately 220 hours of work between November 6, 2023 and January 10, 2024. (Chickedantz Decl. ¶ 5, at 6; Compl. ¶ 93; Wilkins Aff. ¶¶ 12–13.)  Wilkins also claims that defendants owe him an unpaid check in the amount of $1,096.41.  (Chickedantz Decl. ¶ 5, at 6; Compl. ¶ 93; Wilkins Aff. ¶ 13.)

> 14. <u>Yang</u>

Plaintiff Yang resides in Kings County.  (Compl. ¶ 22.)  He worked for defendants for $42 per hour, approximately forty hours per week, from October 10, 2022 until January 10, 2024.  (<u>Id.</u> ¶ 95–96; Yang Aff. ¶¶ 4–5, 10.)  Defendants did not pay him for approximately 240 hours of work between December 1, 2023 and January 10, 2024.  (Chickedantz Decl. ¶ 5, at 6; Compl. ¶ 97; Yang Aff. ¶¶ 12–13.)

**DISCUSSION**

## I.    Default Judgment Standard

Federal Rule of Civil Procedure 55 imposes "a two-step process for obtaining a default judgment." <u>Priestley v. Headminder, Inc.</u>, 647 F.3d 497, 504 (2d Cir. 2011).  First, if a defendant fails to appear, the plaintiff must obtain an entry of default by the clerk of the court. <u>Id.</u> (citing FED. R. CIV. P. 55(a)).  Second, once default is entered against the non-responsive defendant, the plaintiff "must apply to the court for a default judgment."  FED. R. CIV. P. 55(b)(2).  Plaintiffs have satisfied these requirements.  (<u>See generally</u> Entry of Default; Mot.)

8

On consideration of a motion for default judgment, the court is required to accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Payamps v. M & M Convenience Deli & Grocery Corp., No. 16 CV 4895, 2019 WL 8381264, at *5 (E.D.N.Y. Dec. 9, 2019). If the complaint suffices to establish liability, the court must "conduct an inquiry . . . to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

## II.     Procedural Compliance

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." Century Sur. Co. v. Atweek, No. 16 CV 335, WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018). "Local rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution." Contino v. United States, 535 F.3d 124, 126 (2d Cir. 2008). The court denied plaintiffs' first motion for default judgment for lack of compliance with the SCRA and Local Civil Rule 55.2. The second motion for default judgment, as supplemented, complies with the SCRA and Local Civil Rule 55.2. I will address each provision briefly.

Under Local Civil Rule 55.2(a)(1)(B), "any party seeking a default judgment must file . . . an affidavit or declaration showing that . . . [the movant] has complied with the [SCRA]." LOC. CIV. R. 55.2(a)(1)(B). The SCRA, in turn, requires a plaintiff seeking default judgment to "file with the court an affidavit stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931. Plaintiffs' counsel stated in her affirmation in support of the second motion for default judgment that the individual

defendant is not in active military service based on her searches of www.myheritage.com, www.lexisnexis.com, Google, and Facebook.  (Chickedantz Decl. ¶ 4.)  In the absence of any authority suggesting that these online searches are sufficient proof of non-military status, the court ordered plaintiffs to supplement the affidavit with a report from the Department of Defense confirming the individual defendant's non-military status.  (Order, dated Nov. 18, 2025, Dkt. No. 53.)  As directed, plaintiffs filed a status report issued by the Department of Defense showing that the individual defendant was not in active military service as of November 26, 2025.  (Letter of Maria L. Chickedantz, Esq., dated Dec. 3, 2025, Dkt. No. 54.)  Accordingly, the second motion for default judgment complies with Local Civil Rule 55.2(a)(1)(B) and the SCRA.

Local Civil Rule 55.2(a)(2) requires the movant to file "the papers required by Local Civil Rule 7.1," LOC. CIV. R. 55.2(a)(2), namely, "[a] notice of motion . . . specify[ing] the applicable rules or statutes pursuant to which the motion is brought, and . . . the relief sought by the motion; (2) [a] memorandum of law, setting forth the cases and other authorities relied on in support of the motion, and . . . ; (3) [s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion," LOC. CIV. R. 7.1.  Plaintiffs' second motion complies with these requirements in that plaintiffs filed with it a notice of motion brought pursuant to Federal Rule of Civil Procedure 55(b) (Mot.); a memorandum of law (Mem.); and supporting affidavits (Chickedantz Decl.; Ali-Reynoso Aff.;

Gorman Aff.; Jernigan Aff.; Jones Aff.; Lunden Aff.; McBrian Aff.; Nelson Aff.; Roller Aff.; Stricklen Aff.; Ship Aff.; Weinstein Aff.; Wilkins Aff.; Yang Aff.).[4]

Local Civil Rule 55.2(a)(3) requires "any party seeking a default judgment [to] file . . . a certificate of service stating that all documents in support of the request for default judgment . . . have been personally served on, or mailed to the last known residence (for an individual defendant) or business address (for other defendants) of, the party against whom default judgment is sought." LOC. CIV. R. 55.2(a)(3). The certificates of service accompanying the second motion state that plaintiffs mailed all motion papers to the last known residence of the individual defendant and the last known business address of the corporate defendant on May 14, 2025. (Declarations of Zophier Lopez, dated May 14, 2025, Dkt. Nos. 51, 52.) Plaintiffs, therefore, have complied with Local Civil Rule 55.2(a)(3).

### III. Liability

#### A. Statute of Limitations

As a threshold matter, the court considers whether plaintiffs' claims are timely under the applicable statutes of limitations. See Jimenez v. Green Olive Inc., 744 F. Supp. 3d 221, 245 (E.D.N.Y. 2024). The statute of limitations for an FLSA claim is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "When a defendant defaults, the violation is considered 'willful,' and the three-year statute of limitations applies." Rodriguez v. Queens Convenience Deli Corp., No. 09 CV 1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18,

---

[4] As further discussed below, Kodak failed to file an affidavit to substantiate his requested damages. (See Chickedantz Decl. at 4 n.2.) Lacking a basis on which to prove his damages with reasonable certainty, I respectfully recommend that Kodak not be awarded any damages.

2011) (citation omitted).  The statute of limitations for NYLL claims is six years.  N.Y. Lab. L. §§ 198(3), 663(3).

Here, plaintiffs filed the complaint on August 30, 2024 and allege that defendants' FLSA violations were willful such that the three-year statute of limitations applies.  (See Compl. ¶¶ 43, 102.)  The FLSA limitations period, therefore, includes claims that accrued between August 30, 2021 and August 30, 2024; and the NYLL limitations period includes claims that accrued between August 30, 2018 and August 30, 2024.  Since all of plaintiffs' claims accrued in late 2023 and early 2024 (id. ¶ 43), they are timely.

B.  FLSA Liability

1.  Employment Relationship

To establish a claim under the FLSA, a plaintiff must show that there was an employment relationship between the plaintiff and the defendant as defined by the FLSA.  See Gangadharan v. GNS Goods & Servs., No. 18 CV 7342, 2022 WL 824135, at *10 (E.D.N.Y. Mar. 18, 2022).  The FLSA broadly defines an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d), (e)(1).  "[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances."  Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (quoting Barfield v. NYC Health & Hosps. Corp., 537 F.3d 132, 141–42 (2d Cir. 2008)).  "[A]n employee may be jointly employed by two or more employers," and "[i]n such cases, joint employers are subject to joint and several liability for FLSA violations." Michalow v. E. Coast Restoration & Consulting Corp., No. 09 CV 5475, 2017 WL 9400690, at *4 (E.D.N.Y. July 11, 2017), report and recommendation adopted, 2018 WL 1559762 (E.D.N.Y. Mar. 31, 2018).

12

The Second Circuit has adopted a multi-factor test based on "economic reality" to determine whether an employment relationship exists between a plaintiff and defendant. Irizarry, 722 F.3d at 104–05. The test asks whether the alleged employer-defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled [employees'] work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. at 105 (quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)). The test looks at the totality of the circumstances, and no individual factor is dispositive. Id. The allegations in the complaint and plaintiffs' respective affidavits show that each plaintiff had an employment relationship with defendants. Specifically, plaintiffs allege that defendants employed them as art handlers and crate shop organizers between 2021 and 2024. (Compl. ¶¶ 2, 31–34.) The individual defendant hired plaintiffs, set their rates of pay, had the power to fire them, and "supervised, and oversaw [their] job duties." (Id. ¶ 35; see also Ali-Reynoso Aff. ¶¶ 4–7; Gorman Aff. ¶¶ 4–7; Jernigan Aff. ¶¶ 4–7; Jones Aff. ¶¶ 4–7; Lunden Aff. ¶¶ 4–7; McBrian Aff. ¶¶ 4–7; Nelson Aff. ¶¶ 4–7; Roller Aff. ¶¶ 4–7; Stricklen Aff. ¶¶ 4–7; Ship Aff. ¶¶ 4–7; Weinstein Aff. ¶¶ 4–7; Wilkins Aff. ¶¶ 4–7; Yang Aff. ¶¶ 4–7.) These allegations are sufficient for the court to find an employment relationship within the meaning of the FLSA to impose liability on defendants. See Gangadharan, 2022 WL 824135, at *10.

2. Interstate Commerce Requirement

The FLSA further requires that the plaintiff-employee be (1) "engaged in commerce or the production of goods for commerce" or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). To be an "enterprise engaged in commerce," the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) "employees handling, selling or otherwise working on

13

goods or materials that have been moving in or produced for commerce by any person." Brito v. Marina's Bakery Corp., No. 19 CV 828, 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022) (citing 29 U.S.C. § 203(s)(1)(A)).  Plaintiffs have established that the corporate defendant is an enterprise engaged in commerce.  In addition to alleging the statutory requirements,[5] the complaint provides specific examples of interstate commerce, such as that defendants' employees "built custom wooden crates to be shipped domestically and internationally" and "drove trucks to pack, transport, and install artworks in the general NY tristate/northeast area." (Id. ¶¶ 28–29.)  Accordingly, plaintiffs have established that the corporate defendant is a covered enterprise entity under the FLSA.

### 3.  Exemptions

"Section 13 of the FLSA contains a litany of exemptions," Chen v. Major League Baseball, 6 F. Supp. 3d 449, 454 (S.D.N.Y. 2014), aff'd sub nom. Chen v. Major League Baseball Props., Inc., 798 F.3d 72 (2d Cir. 2015), "including if an individual is 'employed in a bona fide executive, administrative, or professional capacity,'" Chavez v. Roosevelt Tropical Corp., No. 23 CV 2413, 2024 WL 4244087, at *6 (E.D.N.Y. Aug. 21, 2024) (quoting 29 U.S.C. § 213(a)(1)), report and recommendation adopted, 2024 WL 4242218 (E.D.N.Y. Sept. 18, 2024). "FLSA exemptions are to be construed narrowly." Gonzalez v. Emp. Sols. Staffing Grp., No. 19 CV 127, 2024 WL 5399228, at *8 (E.D.N.Y. Mar. 11, 2024) (citations omitted).  In the event of a default, a court may draw reasonable inferences and resolve factual shortcomings in favor of the plaintiff.  Id.

---

[5]  The complaint alleges that "from at least January 2021 through [August 30, 2024], [the corporate defendant] . . . had employees engaged in commerce or in the production of goods for commerce, or who handled, sold or otherwise worked on goods or materials that were moved in or produced for commerce by any person; and [ ] had an annual gross volume of sales of not less than $500,000."  (Compl. ¶ 36.)

14

Ali-Reynoso, McBrian, and Nelson worked for defendants as an "administrative coordinator," (Ali-Reynoso Aff. ¶ 4), "warehouse manager" (McBrian Aff. ¶ 4), and "art handler / art closet manager" (Nelson Aff. ¶ 4), respectively.  However, "[a] job title alone is insufficient to establish the exempt status of an employee.  Rather, the exempt or nonexempt status of any particular employee must be determined on the bases of whether the employee's salary and duties meet the requirements of the regulations in this part."  Kadden v. VisuaLex, LLC, 910 F. Supp. 2d 523, 533 (S.D.N.Y. 2012) (citations and quotation marks omitted).  Plaintiffs, including Ali-Reynoso, McBrian, and Nelson, were compensated hourly (Compl. ¶¶ 46, 69, 73), and their primary duties required neither discretion nor independent judgment.  (See, e.g., Ali-Reynoso Aff. ¶ 8; McBrian Aff. ¶ 8; Nelson Aff. ¶ 8.)  Therefore, the administrative exemption does not apply.  29 C.F.R. § 541.200.  Plaintiffs have established that they are non-exempt hourly employees covered by the FLSA.  See, e.g., Gonzalez, 2024 WL 5399228, at *8 ("dispatch manager" and "account manager" held to be non-exempt); Sevilla v. House of Salads One LLC, No. 20 CV 6072, 2022 WL 954740, at *5 (E.D.N.Y. Mar. 30, 2022) ("kitchen manager" held to be non-exempt).

C.  NYLL Liability

To prevail on their NYLL law claims, plaintiffs must establish that their employment relationship with defendants is covered under NYLL, which extends to "any person employed for hire by an employer in any employment."  N.Y. LAB. L. § 190.  Unlike the FLSA, NYLL does not require that a defendant achieve a certain minimum in annual sales or business to be subject to the law.  Garcia v. Badyna, No. 13 CV 4021, 2014 WL 4728287, at *6 (E.D.N.Y. Sept. 23, 2014).  Otherwise, NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors.  See Mahoney v. Amekk Corp., No. 14 CV 4131, 2016 WL 6585810, at *9 (E.D.N.Y.

15

Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status), report and recommendation adopted, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).  Because plaintiffs have an employer-employee relationship with defendants under the FLSA, they also have an employer-employee relationship under NYLL.[6]

### IV.    Damages

Having determined defendants' liability, the court must now decide whether plaintiffs are entitled to a default judgment and damages on their unpaid wage claims.  Plaintiffs allege that defendants "willfully did not pay Plaintiffs for work they performed between various dates at the end of 2023 and early 2024."  (Compl. ¶ 43.)  Accepting plaintiffs' factual allegations as true, I respectfully recommend finding that defendants' default amounts to an admission of liability as to plaintiffs' unpaid wage claims under the FLSA and NYLL.

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (quoting Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012)).  "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits."  Joe Hand Promotions, Inc. v. Benitez, No. 18 CV 6476, 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), report and recommendation adopted, 2020 WL 5517240

---

[6] As I find that the individual defendant and the corporate defendant were jointly plaintiffs' employers, each defendant is jointly and severally liable under the FLSA and NYLL for any damages award made in plaintiffs' favor.  See Cavalotti v. Daddyo's BBQ, Inc., No. 15 CV 6469, 2018 WL 5456654, at *11 (E.D.N.Y. Sept. 8, 2018) (collecting cases).

(E.D.N.Y. Sept. 14, 2020); see also Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).  Plaintiffs, except Kodak, have substantiated their claims with evidence in the form of detailed affidavits proving the extent of their respective damages.  (See Ali-Reynoso Aff.; Gorman Aff.; Jernigan Aff.; Jones Aff.; Lunden Aff.; McBrian Aff.; Nelson Aff.; Roller Aff.; Stricklen Aff.; Ship Aff.; Weinstein Aff.; Wilkins Aff.; Yang Aff.)  Because Kodak has failed to demonstrate his damages to a reasonable certainty by affidavit or otherwise,[7] I respectfully recommend that he not be awarded any damages.

A.  Unpaid Wages

Under both statutes, employees must be paid at least the minimum hourly wage for each hour that they work.  See 29 U.S.C. § 206(a); N.Y. LAB. L. § 652.  And where "a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award damages under the statute providing the greatest amount of relief."  Payamps, 2019 WL 8381264, at *11 (quotation marks omitted).  NYLL "expressly provides that employees are entitled to recover all unpaid wages," not just a minimum hourly wage.  Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011); see, e.g., Calle v. Yoneles Enters., Inc., No. 16 CV 1008, 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24, 2017) (finding that a plaintiff "can recover for unpaid 'straight' time at the agreed-upon rate, even if it exceeds minimum wage"), report and recommendation adopted, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018).  Therefore, "a plaintiff who prevails on a cause of action under the state law is entitled to the full amount of wages owed, not just the statutory minimum wage for the hours worked."  Chun Jie Yin v. Kim, No. 07 CV 1236, 2008 WL 906736, at *4, *6 (E.D.N.Y. Apr. 1, 2008) (awarding damages in the full

---

[7]  Plaintiffs' counsel reports that "Kodak has not responded to any of [her repeated] attempts at contact, and therefore, the . . . motion for default judgment does not include his [affidavit]." (Chickedantz Decl. at 4 n.2.)

amount of the plaintiff's unpaid wages at plaintiff and defendant's "agreed upon wage"); see also

Leo v. Province Therapeutics, LLC, No. 23 CV 5418, 2024 WL 2923945, at *3 (E.D.N.Y. May

21, 2024) (awarding unpaid wage damages to the plaintiff at "the rate she was entitled to be

paid"), report and recommendation adopted, 2024 WL 2891798 (E.D.N.Y. June 10, 2024). "The

Second Circuit has expressly endorsed this approach so long as the court has 'ensured itself that

there was a basis for the damages specified in the default judgment.'" Santillan, 822 F. Supp. 2d

at 293 (quoting Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105,

111 (2d Cir. 1997)). Here, plaintiffs allege that defendants did not pay them any wages during

the relevant periods with respect to each plaintiff. (Chickendantz Decl. ¶ 5.) Given the

allegations in the complaint and plaintiffs' respective affidavits, I respectfully recommend that

plaintiffs be awarded total unpaid wages of $94,783.91, as set forth in the following table:

| Plaintiff | Hourly Rate | Unpaid Hours | Unpaid Wages |
|---|---|---|---|
| Ali-Reynoso | $31.25 | 384 | $12,000 |
| Gorman | $40 | 220 | $8,800 |
| Jernigan | $45 | 300 | $13,500 |
| Jones | $32 | 184 | $5,888 |
| Lunden | $45 | 240 | $10,800 |
| McBrian | $30 | 64 | $1,920 |
| Nelson | $35 | 222 | $7,770 |
| Roller | $52.50 | 9 | $472.5 |
| Stricklen | $33 | 215 | $7,095 |
| Ship | $33 | 235 | $7,755 |
| Weinstein | $25 | 93 | $2,325 |
| Wilkins | $27.50 | 220 | $6,050 + $1,096.41[8] = $7,146.41 |
| Yang | $42 | 240 | $10,080 |
| **TOTAL UNPAID WAGES:** | | | **$94,783.91** |

---

[8] The court credits Wilkins' affidavit in which he states that he "was not paid for approximately 220 hours, plus an unpaid check in the amount of $1,096.41 . . . ." (Wilkins Aff. ¶ 13; see also Chickedantz Decl. ¶ 5, at 6.)

B. Liquidated Damages

In addition to unpaid wages, plaintiffs seek liquidated damages under NYLL. (Mem. at 14; Chickedantz Decl. ¶ 5.) NYLL provides for liquidated damages for wage claim violations, calculated in an amount equal to one hundred percent of the total amount of wages found to be due. N.Y. LAB. L. §§ 198(1-a), 663(1). "If the employer shows that 'the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of the FLSA or NYLL, a court may decide not to award liquidated damages." Sanchez v. Hyper Structure Corp., No. 19 CV 4524, 2023 WL 2815717, at *11 (E.D.N.Y. Feb. 24, 2023) (quoting 29 U.S.C. § 260; and citing NYLL § 198(1-a) (granting good-faith exception to liquidated damages)). Because defendants have defaulted, there is no showing of good faith, and liquidated damages are appropriate. Id. (citing Herrera v. Tri-State Kitchen & Bath, Inc., No. 14 CV 1695, 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015)). As this court has calculated plaintiffs' damages under NYLL, plaintiffs are entitled to 100 percent of their unpaid wages in liquidated damages. Accordingly, I respectfully recommend that plaintiffs be awarded the following amounts in liquidated damages:

| Plaintiff | Unpaid Wages | Liquidated Damages |
|---|---|---|
| Ali-Reynoso | $12,000 | $12,000 |
| Gorman | $8,800 | $8,800 |
| Jernigan | $13,500 | $13,500 |
| Jones | $5,888 | $5,888 |
| Lunden | $10,800 | $10,800 |
| McBrian | $1,920 | $1,920 |
| Nelson | $7,770 | $7,770 |
| Roller | $472.5 | $472.5 |
| Stricklen | $7,095 | $7,095 |
| Ship | $7,755 | $7,755 |
| Weinstein | $2,325 | $2,325 |

| | | |
|---|---|---|
| Wilkins | $7,146.41 | $7,146.41 |
| Yang | $10,080 | $10,080 |
| **TOTAL LIQUIDATED DAMAGES:** | | **$94,783.91** |

C. Prejudgment Interest

Plaintiffs also seek prejudgment interest. (Mem. at 24–27.) "Though the FLSA does not permit awarding pre-judgment interest in addition to liquidated damages, the NYLL does." Zabrodin v. Silk 222, Inc., 702 F. Supp. 3d 102, 123–24 (E.D.N.Y. 2023) (citing Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015)). "Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." Fermin, 93 F. Supp. 3d at 49 (internal quotation marks, citations and alterations omitted). The rate of interest is calculated at nine percent per annum, N.Y.C.P.L.R. § 5004, and where damages were incurred at various times, may be computed from a single reasonable intermediate date, id. § 5001(b). "Most courts in this district calculate simple prejudgment interest in NYLL actions from the midpoint date of the claims through the date judgment is entered." Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 380 (E.D.N.Y. 2022) (citation omitted). The daily rate of interest for each plaintiff, from the midpoint date of their claims, is set forth in the following table:

| Plaintiff | Start Date | End Date | Midpoint Date | Unpaid Wages | Daily Interest Rate ([Unpaid Wages] × .09 / 365) |
|---|---|---|---|---|---|
| Ali-Reynoso | 11/13/2023 | 1/10/2024 | 12/12/2023 | $12,000 | $2.96 |
| Gorman | 12/4/2023 | 1/10/2024 | 12/22/2023 | $8,800 | $2.17 |
| Jernigan | 11/20/2023 | 1/10/2024 | 12/15/2023 | $13,500 | $3.33 |
| Jones | 12/4/2023 | 1/10/2024 | 12/22/2023 | $5,888 | $1.45 |
| Lunden | 11/25/2023 | 1/10/2024 | 12/18/2023 | $10,800 | $2.67 |
| McBrian | 10/25/2023 | 11/10/2023 | 11/2/2023 | $1,920 | $0.47 |
| Nelson | 12/4/2023 | 1/10/2024 | 12/22/2023 | $7,770 | $1.92 |

| | | | | | |
|---|---|---|---|---|---|
| **Roller** | 11/9/2023 | 11/9/2023 | 11/9/2023 | $472.5 | $0.11 |
| **Stricklen** | 11/27/2023 | 1/10/2024 | 12/19/2023 | $7,095 | $1.75 |
| **Ship** | 10/23/2023 | 1/10/2024 | 12/1/2023 | $7,755 | $1.91 |
| **Weinstein** | 10/30/2023 | 1/10/2024 | 12/5/2023 | $2,325 | $0.57 |
| **Wilkins** | 11/6/2023 | 1/10/2024 | 12/18/2023 | $7,146.41 | $1.76 |
| **Yang** | 12/1/2023 | 1/10/2024 | 12/21/2023 | $10,080 | $2.49 |

Accordingly, I respectfully recommend that plaintiffs recover prejudgment interest at their respective daily rates from the midpoint date of their employment through the date judgment is entered.

### D. Post-Judgment Interest

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961(a). "The very language of 28 U.S.C. § 1961 ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." Duffy v. Oyster Bay Indus., Inc., No. 10 CV 3205, 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), report and recommendation adopted, 2011 WL 2259749 (E.D.N.Y. June 2, 2011). Therefore, I respectfully recommend that plaintiffs be awarded post-judgment interest, to be calculated from the date judgment is entered until the date of payment, at the rate set forth in 28 U.S.C. § 1961(a).

### E. Automatic Increase of NYLL Damages

NYLL entitles a successful plaintiff to additional damages in a wage-and-hour action if a judgment is not timely paid. "[I]f any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." N.Y. LAB. L. § 198(4). This interest applies only to damages awarded under NYLL, see Ms. Wine Shop Inc., 643 F. Supp. 3d at 381 n.12, and may

21

be awarded in addition to post-judgment interest awarded under 28 U.S.C. § 1961. See, e.g., Amador v. 109-19 Food Corp., No. 21 CV 4633, 2026 WL 717863, at *11 (E.D.N.Y. Jan. 30, 2026) (awarding fifteen percent increase alongside post-judgment interest), report and recommendation adopted, 2026 WL 716229 (E.D.N.Y. Mar. 13, 2026); Camillo v. Khim's Millennium Mkt., Inc., No. 22 CV 7846, 2025 WL 951265, at *15 (E.D.N.Y. Mar. 13, 2025) (same), report and recommendation adopted, 2025 WL 948125 (E.D.N.Y. Mar. 28, 2025). Accordingly, I respectfully recommend that plaintiffs' NYLL damages increase by fifteen percent if they remain unpaid more than ninety days after the entry of judgment or the expiration of time to appeal, whichever is later.

## V.    Attorney's Fees and Costs

As the prevailing party, plaintiffs are entitled to recover reasonable attorney's fees and costs under both the FLSA and the NYLL. See 29 U.S.C. § 216(b), N.Y. LAB. L. §§ 198, 663(1). Courts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008). The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011). As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records. See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam). Plaintiffs have satisfied this requirement. (See Chickedantz Decl., Ex. A.)

The court next assesses whether plaintiffs' counsel requests a reasonable hourly rate. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994). A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying

22

client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Loc. Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted). A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." Arbor Hill, 522 F.3d at 184 n.2.

Plaintiffs request an hourly rate of $450 for Maria L. Chickedantz, counsel to Eisner, Dictor & Lamadrid, P.C. (Chickedantz Decl. ¶¶ 8, 12.) Ms. Chickedantz has twelve years of employment litigation experience. (Id. ¶ 8.) Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners in FLSA cases. See Chavez, 2024 WL 4244087, at *13 (collecting cases). Due to the relative simplicity of plaintiffs' claims, I find that $400 is a reasonable rate. See Nasir v. Khokon, No. 23 CV 2128, 2024 WL 4664722, at *18 (E.D.N.Y. Aug. 26, 2024) (awarding $400 hourly rate to solo practitioner practicing employment law for over a decade in this district and New York state courts); Castillo v. Hollis Delicatessen Corp., No. 22 CV 5476, 2024 WL 4111108, at *10 (E.D.N.Y. Aug. 22, 2024), report and recommendation adopted, 2024 WL 4107258 (E.D.N.Y. Sept. 6, 2024) (awarding $350 hourly rate for managing partner in straightforward FLSA case).

The court next looks to the reasonableness of the number of hours billed. To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134).

23

The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  "If the Court finds that some of the time the attorney billed was not reasonably necessary, it should reduce the time for which compensation is awarded accordingly." Ramirez v. Nahid Furniture Inc., No. 24 CV 4907, 2026 WL 759236, at *14 (E.D.N.Y. Mar. 17, 2026) (quoting Perry v. High Level Dev. Contracting & Sec. LLC, No. 20 CV 2180, 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022)).  "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." Id. (quoting Perry, 2022 WL 1018791, at *14 (citation modified)).

Ms. Chickedantz billed 83.5 hours of work on this case.  (Chickedantz Decl., Ex. B.)  At the recommended rate of $400, this would amount to a total of $33,400 of attorney's fees. Having reviewed the contemporaneous billing records, I find the amount of time spent on this case to be excessive.  "This is a routine wage and hours default judgment motion and 'counsel [should be able to] draw on the experience of litigating many similar cases in this court.'" Kliger v. Liberty Saverite Supermarket Inc., No. 17 CV 2520, 2018 WL 4782342, at *9 (E.D.N.Y. Sept. 7, 2018) (quoting Koszkos v. Janton Indus., Inc., No. 15 CV 1700, 2016 WL 4444329, at *8–9 (E.D.N.Y. Aug. 3, 2016) (finding 76.4 hours excessive for similar case, and reducing fees by thirty percent), report and recommendation adopted, 2016 WL 4444782 (E.D.N.Y. Aug. 23, 2016)); see also Morales v. B&M Gen. Renovation Inc., No. 14 CV 7290, 2016 WL 1266624, at *12 (E.D.N.Y. Mar. 9, 2016) (finding sixty-three hours excessive for similar case, and reducing fees by ten percent), report and recommendation adopted, 2016 WL 1258482 (E.D.N.Y. Mar. 29, 2016).  Under the circumstances of this case, I recommend reducing the number of hours billed

24

by twenty percent. Accordingly, I respectfully recommend that plaintiffs be awarded $26,720 in attorney's fees ($400 × 66.8 hours).

Plaintiff additionally requests compensation for $903.02 in service of process fees. (Chickedantz Decl. ¶¶ 15, 17.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Plaintiffs have submitted sufficient documentation for service of process costs. (See Chickedantz Decl., Ex. B.) Accordingly, I find $903.02 to be reasonable out-of-pocket expenses.

CONCLUSION

For the reasons set forth above, I respectfully recommend that the motion for default judgment be granted in part and denied in part and that plaintiffs be awarded damages under NYLL as follows:

| Plaintiff | Unpaid Wages | Liquidated Damages | Total Damages |
|---|---|---|---|
| Ali-Reynoso | $12,000 | $12,000 | $24,000 |
| Gorman | $8,800 | $8,800 | $17,600 |
| Jernigan | $13,500 | $13,500 | $27,000 |
| Jones | $5,888 | $5,888 | $11,776 |
| Lunden | $10,800 | $10,800 | $21,600 |
| McBrian | $1,920 | $1,920 | $3,840 |
| Nelson | $7,770 | $7,770 | $15,540 |
| Roller | $472.5 | $472.5 | $945 |
| Stricklen | $7,095 | $7,095 | $14,190 |
| Ship | $7,755 | $7,755 | $15,510 |
| Weinstein | $2,325 | $2,325 | $4,650 |
| Wilkins | $7,146.41 | $7,146.41 | $14,293 |
| Yang | $10,080 | $10,080 | $20,160 |

I further respectfully recommend that plaintiffs be awarded prejudgment interest at the following rates from the following dates:

25

| Plaintiff | Calculation Start Date | Daily Rate |
|---|---|---|
| Ali-Reynoso | 12/12/2023 | $2.96 |
| Gorman | 12/22/2023 | $2.17 |
| Jernigan | 12/15/2023 | $3.33 |
| Jones | 12/22/2023 | $1.45 |
| Lunden | 12/18/2023 | $2.67 |
| McBrian | 11/2/2023 | $0.47 |
| Nelson | 12/22/2023 | $1.92 |
| Roller | 11/9/2023 | $0.11 |
| Stricklen | 12/19/2023 | $1.75 |
| Ship | 12/1/2023 | $1.91 |
| Weinstein | 12/5/2023 | $0.57 |
| Wilkins | 12/8/2023 | $1.76 |
| Yang | 12/21/2023 | $2.49 |

I further recommend that post-judgment interest be awarded, calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961. I also recommend that plaintiffs be awarded a fifteen-percent increase in NYLL damages, not including post-judgment interest, for any amounts that are not paid within ninety days of judgment or the expiration of time to appeal. Finally, I respectfully recommend that plaintiffs be awarded attorney's fees of $26,720 and costs of $903.02.

Plaintiffs are directed to serve copies of this Report and Recommendation on defendants by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically within fourteen days. Failure to file objections within the specified time waives the right to appeal the district court's order. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

*Robert M. Levy*

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
March 27, 2026

26